DANIEL H. ERDMAN, CLAIMANT, v. MOORE & COMPANY, BUILDERS; R. B. ELLISON, OWNER; JOHN L. SOUDER, MORTGAGEE.

1. A heater and range are fixtures, although but slightly attached to the building, if put in by the owner of the premises with the intention of making them such.

2. An owner of land commenced building a house thereon, and, while it was in the course of building, made a mortgage thereon, and on the same day conveyed the fee to another person, agreeing with the latter to complete the building, and in doing so engaged the claimant to put in the building a kitchen range and heater. *Held*, that such claimant was entitled to a mechanics' lien having priority over the mortgage.

On mechanics' lien. On case certified from the Camden Circuit.

Argued at November Term, 1895, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and LUDLOW.

For the plaintiff, *Lewis Starr* and *Lindley M. Garrison.*

By agreement between parties this case has been selected as a test case, which will control the determination of a number of others now pending in the Camden Circuit.

The first question in this case, upon which the advisory opinion of the Supreme Court has been requested, is:

" Did the claimant perform labor and furnish materials in the erection and construction of the building described in the lien claim ?" In other words, did the heater and range furnished by him, when attached to the dwelling-house, become part of the freehold as fixtures ?

The plaintiff claims that the articles became fixtures, and as such constitute a part of the land.

Whether property ordinarily personal becomes annexed to and part of the freehold, depends upon the union of three requisites :

*First.* Actual annexation to the realty, or something appurtenant thereto.

*Second.* Application to the use or purpose to which that part of the realty so connected was appropriated.

*Third.* Intention of the party making the annexation to make a permanent accession to the freehold. *Potts* v. *New Jersey Arms Co.*, 2 *C. E. Gr.* 395; *Quimby* v. *Manhattan Railroad Co.*, 9 *Id.* 260. And the following cases in the Court of Errors: *Williamson* v. *New Jersey Southern Railroad Co.*, 2 *Stew. Eq.* 311; *Blanche* v. *Rogers*, 11 *C. E. Gr.* 563; *McMillan* v. *New York Waterproof Co.*, 2 *Stew. Eq.* 610; *Penn Mutual Insurance Co.* v. *Semple*, 11 *Id.* 575; *Scheifele* v. *Schmitz*, 15 *Id.* 700; *Speiden* v. *Parker*, 1 *Dick. Ch. Rep.* 292.

All the requisites necessary for the characterization of the articles furnished by the plaintiff as fixtures and part of the realty are present in this case.

### AS TO ANNEXATION.

Annexation as one of the requisites to a fixture is based upon two grounds—*first*, that to become part of the realty it must be incorporated with that which is fixed; and *second*, that unless it is fixed to the realty, no intention to incorporate it therewith will be presumed.

Therefore, annexation is one of the three requisites mentioned by the courts.

A careful reading of the cases, however, will show that the entire drift of the modern cases is to regard annexation as merely a high class of evidence of intention; and where, as in the present case, the intention is most clear, the slightest annexation will be considered sufficient.

The heater was an ordinary portable one, mounted on the cellar floor, and the smoke-pipe and hot-air pipes walled into the flues with bricks and cement mortar to make them tight.

The range was connected to the smoke-flue. Attached to the range was an upright boiler for the purpose of heating water. This boiler was set over the fire, and two tubes projected through the cast-iron head, one being connected with the hot-water system of the house and the other to receive water from the street. To disconnect the range would shut off the water from the house.

### AS TO APPROPRIATION.

The only means of heating the house was the heater erected in the cellar, and the hot-air pipes connected with the heater were attached to flues which carried the hot air to the different rooms in the dwelling.

The range was located in the kitchen and formed a necessary part of the system to supply water, both hot and cold, to the occupants of the dwelling. All the hot water came through the boiler which was attached to the range.

### AS TO INTENTION.

Moore & Company, the builders, at the time the materials were furnished and labor performed by claimant, were erecting a large number of houses, and the heater and range furnished to the house in question was only one of a number of like heaters and ranges furnished to and placed in the other houses being erected by Moore. The latter was engaged in a large business operation, having numbers of houses in the course of construction simultaneously.

After the house was commenced, and on June 26th, Moore and Zimmerman made a written agreement, whereby Zimmerman agreed to purchase the house in question and accept a deed for the same at once, Moore agreeing to complete the same in a good and workmanlike manner. The deed from Moore to Zimmerman was dated June 29th, 1893, and recorded the following day.

Claimant furnished the range and heater on August 16th, 1893, while Moore was erecting the house in pursuance of his agreement with Zimmerman, and after Zimmerman had received a deed for the same. Moore remained in possession of the house until August 30th, 1893, when there was a final settlement between him and Zimmerman, as shown by his receipt.

The intention of both Moore and Zimmerman to make the

range and heater permanent accessions to the freehold is evidenced by the following facts :

*First.* The house in question being but one among a large number in which heaters and ranges were furnished as part of their original construction.   When a builder purchases ten heaters and ten ranges to be attached to ten houses in a row being constructed by him, he certainly intends that each heater and range shall become a permanent part of the building.

*Second.* The heater and range were placed in the house by Moore, pursuant to the agreement with Zimmerman by which the former was to complete the house in a good and workmanlike manner.   This demonstrates that the heater and range constituted a part of the dwellings and were necessary to their completion.

*Third.* The heater and range passed into the possession of Zimmerman by virtue of his deed for the premises, and afterwards were transferred as part of the house by the deed from Zimmerman to Ellison, the present owner.

*Fourth.* Zimmerman testified that the dwelling would not have been completely finished under the terms of his contract with Moore, unless it contained a heater and range, and without the heater and range the house would not have been accepted by him.

Whether an article is personal or a fixture is not to be determined by its capability or incapability of being detached and removed from the premises without injury to the freehold, but depends upon other circumstances.   *Quimby* v. *Manhattan Railroad Co., supra.*

The following cases sustain the theory that the claimant is entitled to a mechanics' lien for the range and furnace furnished by him during the construction of the dwelling-house : *Turner* v. *Wentworth*, 119 *Mass.* 459 ; *Stockwell* v. *Campbell*, 39 *Conn.* 362 ; *Capen* v. *Peckham*, 35 *Conn.* 88 ; *Theilmann* v. *Carr*, 75 *Ill.* 385 ; *Fratt* v. *Whittier*, 58 *Cal.* 126 ; *Allen* v. *Mooney*, 130 *Mass.* 155.

In *Parker·*v. *Wulstein*, 3 *Dick. Ch. Rep.* 94, Vice Chan-

cellor Bird holds that a portable furnace erected by a tenant under what is generally known as an improvement lease, becomes part of the freehold.

The only other case in New Jersey in which this question has been considered is *Rahway Savings Institution* v. *Irving Street Church*, 9 *Stew. Eq.* 61, in which the Chancellor held that a portable iron furnace for heating a church was not, as between mortgagor and mortgagee, a fixture. The heater in question was placed in the building long after the mortgage was given; therefore, the evidence of intention was entirely lacking. A careful reading of this case will disclose the fact that the circumstances of the erection of the furnace were entirely different from those in the present case. We submit, therefore, that this authority should not control the matter to be determined upon this argument.

The remaining question to be determined is: "Has the claimant a lien on the building and land, or either?"

The owner contends that as the plaintiff does not show a consent in writing to the erection of the building by Zimmerman, the legal owner at the time the material was furnished, as contemplated by the fourth section (*Rev.*, p. 669), he is not entitled to any lien, either upon the building or land, as against the estate of the owner.

The following undisputed facts appear from the testimony:

Moore, the person designated as the builder, owned the land and commenced the erection of the building in April, 1893.

On June 26th, after work on the house had been commenced, and during the progress of the construction, Zimmerman bought the property of Moore by agreement in writing. This agreement was not dated, but it was proved to have been delivered on June 26th, 1893.

One hundred dollars was paid by Zimmerman to Moore, and a deed delivered pursuant to the agreement. Such deed is dated June 29th, 1893, and recorded the day following.

By the agreement in writing, Moore agreed to complete the house in a good and workmanlike manner, and upon a settle-

ment Zimmerman was to give a second mortgage; taxes and other encumbrances were to be then adjusted.

The materials of plaintiff were furnished August 16th, 1893.

Moore remained in possession of the house, being engaged in completing it under his contract, until August 30th, 1893, when a final settlement was effected and Zimmerman entered into full possession of the premises.

Zimmerman afterwards sold to Ellison, who was the owner at the time of the filing of the lien claim, and therefore properly designated as owner in the said claim and subsequent proceedings.

*First.* We submit that under these facts this case is not within the terms of the fourth section, requiring a consent in writing.

After the execution of the agreement in June, the building was being erected by Zimmerman, the owner of the land, under the agreement with Moore. In other words, Zimmerman, the owner of the land, engages Moore, the builder, to build a house for him, Zimmerman.

The statute does not define the person erecting the building as the one who actually performs manual labor, either himself or through the employment of others. The terms of the fourth section are sufficiently comprehensive to include not only the actual builder or contractor, but also the person for whom or at whose request or for whose ultimate benefit or advantage the improvement is being made.

To construe this section in any other way would be to prohibit a lien for materials furnished in the construction of a building which is being erected by a contractor under a verbal agreement with the owner.

*Second.* According to any reading of the act, we submit that the agreement between Moore and Zimmerman is sufficient evidence of the latter's consent in writing to the erection of the building.

The courts have construed the fourth section in such a way as to require that the consent to bind the land must be of

such a character as will show an intention on the part of the person consenting to charge himself and his land with the cost of the construction.

Cases construing consents in writing containing stipulations that all the cost should be at the expense of the person building, and in no way entailing any obligation upon the person consenting, are no authority in the present case.

The consent in this case does not contain any such qualifications on the part of Zimmerman; but, on the contrary, its terms expressly provide for an adjustment of taxes and prior encumbrances at the time of final settlement.

There is nothing in this agreement inconsistent with a consent to encumber the land of Zimmerman for the debts incurred by Moore in the erection and construction of the building for Zimmerman.

*Third.* In any event, if the facts in this case bring it within the terms of the fourth section, the claimant is entitled to a lien upon the building and the estate of the builder in the land.

In August, 1893, when claimant furnished his materials, Moore, the builder, was in possession of the premises, which possession would constitute a sufficient interest in the land to entitle the claimant to a lien upon the building. *Hazelhurst v. Sea Isle City Hotel Co.*, 25 *Atl. Rep.* 201.

For the defendants, *Martin P. Grey.*

This is a suit on the Mechanics' Lien act, to enforce against a lot, No. 500 North Eighth street, Camden, the claim for an alleged lien, for furnishing a portable heater and a portable range to the house built on the premises.

The builder has filed no plea.

The owner and mortgagee filed the pleas authorized by the statute, the general issue, and also that the land is not liable to the supposed lien, and that the mortgage is precedent in order of priority of lien upon the premises to the supposed mechanics' lien of the plaintiff.

On these issues the Circuit Court judge has certified into this court these questions:

*First.* "Whether the materials furnished and the labor performed by claimant in this case are of such a character as to entitle the claimant to a mechanics' lien."

*Second.* "Whether the claimant is entitled to a lien upon the building and lands, or either, as against the estate of the owner and mortgagee."

It must be remembered that the plaintiff sets up a special statutory lien, by which he asserts that he is to be secured in the payment of the builder's debt to him, out of the estate of another person, the owner, who made no agreement to pay this debt, and can only have his land charged by virtue of the operation of the statute.

Such a claim is of course exceptional, and can only be sustained against the landowner because the party asserting it shows that he is clearly within the terms and limitations of the statute. This principle has been repeatedly approved by our highest courts.

In *Associates, &c.,* v. *Davison,* 5 *Dutcher* 423, it was held by the Court of Errors and Appeals that as against the landowner, this statute was to be strictly construed. "Such is the case when it is sought to charge the land in pursuance of a consent in writing, where it can be charged in no other way." "The law exempts it until that consent is given, upon the plainest principles of natural justice, that one man's property shall not be taken to pay another man's debt."

The act is special, and the lien will not be extended by construction. *Ayres* v. *Revere,* 1 *Dutcher* 474.

I. The first question certified is whether the material furnished is of such a character as to entitle plaintiff to a mechanics' lien.

The plaintiff in the case certified claims that the portable heater and portable range which he furnished were of such a character as to justify the claim of a mechanics' lien.

These names "portable heater" and "portable range" were those which were used in designating the character of the

articles. They were, in the consideration of those who dealt with them (including the plaintiff himself), portable articles, capable of being carried about, and this phrasing is commonly used to distinguish this class of heaters from those which are built into the building.

The nomenclature is inconsistent with the claim that portable heaters and ranges are or can be fixtures and parts of a building. Their essential character is that they shall not be, and are not, fixed in one place as part of the structure, but movable from one place to another at the convenience of those using them.

In this case the portable range was not built into the wall in any way; it stood on its own feet, maintained itself by its own weight; it was a portable range, connected with the chimney by a stove-pipe; the water of the house was connected with a boiler located over the top of the range in the smoke-flue; this attachment was by a screw-joint, which might be attachable to any other water-pipes in any other house of the same size; to detach it would have cut off the hot water, but the pipe for cold water could be detached before it reached the boiler, and thus get cold water. It was not all the water-supply which would be cut off by detaching the supply to the range, else the house must have had a supply of hot water only.

The article thus described is obviously well named as a portable range. It had no such connection with the land, either by its innate character, or by the manner of its attachment to the premises, or by the consideration of those who dealt with it and described it as a " portable range," as made it part of the realty.

All its attachments to the land were temporary and adjustable; it had no special place built to receive it; it was not shown to have been walled in a part of the house structure in any way; it held its place by its own gravity; in short, no one, in seeing it, could have supposed for a moment that it was any other than the adjoining kitchen stove, removable at the choice of the occupant of the house. It must certainly

have so impressed the intending purchaser (now the owner) had he examined the premises before purchasing. He never would have been warned by the appearance of the thing itself that it was part of the realty and that it might be the subject of a mechanics' lien and thus put him upon inquiry.

A stove standing in its place, attached to the chimney by a pipe, where it was fastened by putting pieces of bricks around it, held, as between grantor and grantee of real estate, not to be a fixture and not to pass with the land. *Freeland* v. *Southwaite*, 24 *Wend*. 191.

The same principle was declared in New Jersey, in the case of *Rahway Savings Institution* v. *Irving Street Baptist Church*, 9 *Stew. Eq.* 61, where, as between mortgagor and mortgagee, a portable heater was held not to be a part of the realty, and the case of Quimby *v.* Manhattan Co., and several others cited by the plaintiff's brief, were discussed and differentiated, notably the case of *Stockwell* v. *Campbell*, 39 *Conn.* 362, which was discussed at length and disapproved, and its reasoning overthrown.

The plaintiff seeks to avoid the force of this decision, because the furnace in the Rahway case was put in after the mortgage was given. But the Chancellor, in his opinion, after reciting this fact, makes no further reference to it and bases no argument whatever upon this incident, either as evidence of intention or the contrary. His whole reasoning is upon the entire failure of proof to show annexation to the freehold by setting up a portable furnace. This case has been recognized as established law since 1882.

In 1885, Vice Chancellor Bird, in *Princeton Bank* v. *Van Dyke, Sup. Stew. Dig.,* tit. *"Fixtures,"* 323, held two furnaces in a dwelling-house for heating purposes to be personal property, as between a mortgagee of the lands and an auditor attaching the property of the mortgagor.

The case cited as decided by Vice Chancellor Bird (*Parker* v. *Wulstein*, 3 *Dick. Ch. Rep.* 94) was decided upon an entirely different condition of facts. There was a covenant that all improvements should remain, and the Vice Chancellor

held that while the furnace might be removed, and this might determine whether it was a fixture or not, yet that this was not the criterion in that case.    The question to be decided was whether the furnace and flues were improvements, and he held not, that it was a fixture and part of the realty, but that the way in which the flues were cut through the floors, altering the building, was an improvement controlled by the covenant. This case, therefore, so far as it has any application to the case in hand, is against the plaintiff.

The facts as to the portable heater show the same circumstances as to the subject-matter for which the lien is claimed.

The plaintiff, Erdman, says it was just like any portable heater; that it rested on the cellar bottom, not built on it at all, and connected with the flues by tin hot-air and galvanized smoke-pipes, cemented at the joints, but capable of being slipped out, being connected by a collar made for that purpose.    Simply set on the floor; no foundation for it.    Stood by its own weight and had a galvanized-iron jacket around it to retain and conduct away the heat.    Both range and heater were portable, and could be taken down and out without tearing base down or breaking or tearing walls.    They would have been just as adjustable in any other house of that size as in this.

The cases cited show that in New Jersey this question as to whether a portable heater is a fixture and part of realty, stands *stare decisis* that it is not.    The principle established is even more forceful when applied to a kitchen portable range, not walled in and only connected with the base by smoke and water-pipes, all of which are adjustable.

An effort was made to sustain the claim that portable heaters and ranges were part of realty, by proof of custom in Camden, to hold them to be such.    But all the elements of proof of a custom were lacking; indeed, the witness said he had known an owner to reserve them, although commonly it was the rule to let them go with the house; and the plaintiff himself swore that the supposed custom depended on the contract made with the owner.

Such testimony as this, to overcome the well-established rules of the law distinguishing real from personal property, is certainly too vague and feeble to prove anything.

Mr. Zimmerman's contract with Moore is also claimed to show the intent of the parties that the portable heater and range should be realty, but this is begging the question. There is no mention of either range or heater in the contract, simply an agreement to deed "a store and dwelling and lot," completing same in a good and workmanlike manner. The very question is whether this was a part of the realty; mere agreement will not alone make personalty into realty. Acts of an indisputable character giving to the personalty the character of realty by fixed attachment and permanent character are just as necessary, and certainly where these acts are the only means whereby third parties (intending purchasers, possibly) may be warned whether supplies to a house are to be held as personal or real property.

II. The second question certified is whether the claimant is entitled to a lien upon the building and lands, or either, as against the estate of the owner and mortgagee.

The fourth section of the Mechanics' Lien act requires that the consent in writing of the owner of the premises must be given to the erection of the building, &c. *Rev., p.* 669, § 4.

The supposed consent of Zimmerman is no such consent in writing as is contemplated by the act. The statute indicates that the form of the consent should resemble that of a deed. *Associates, &c.,* v. *Davison,* 5 *Dutcher* 422, 423. It makes no reference to the supplying of portable heater and range, which are, as above shown, no part of a dwelling or store. Ellison, when he took his deed, May 18th, 1894, had and could have had no warning, when he settled with Zimmerman and paid for the property, that a lien claim was outstanding for a portable heater and range. The plaintiff never gave any credit to Moore because of the supposed consent by Zimmerman. It is not shown that he had even heard of it when he furnished the goods to Moore on August 16th, 1893. All the cases go on the idea that the plaintiff furnished the

goods on the faith of the consent in writing, looking to the land for his security. Here the plaintiff is evidently seeking to obtain a benefit from the supposed consent, on which he did not rely when he furnished the goods. See *Associates, &c.,* v. *Davison,* 5 *Dutcher* 423. See other cases on this point at end of brief.

On June 30th, 1893, a deed from Moore to Zimmerman, dated June 29th, 1893, was recorded, so that at the date when the goods were furnished Zimmerman was the owner.

On June 29th, 1893, the mortgage now held by the defendant Souder was made and recorded the same day. The mortgagee's rights as to priority were fixed as of the date of the record of his mortgage. He took a pledge of the title which Moore had in the premises before the deed to Zimmerman. No agreement or contract by Zimmerman could antedate the mortgage, yet it is Zimmerman's consent or contract made after the mortgage had been recorded, which is appealed to as the support of the plaintiff's claim.

The goods were furnished to Moore, who is named as the builder, and charged on the books of the plaintiff with the goods, of the date of August 16th, 1893.

Now, the plaintiff when he credited Moore with the goods on August 16th, 1893, was bound by the record of the deed of Moore to Zimmerman, and of the mortgage of Casselman, to know that Moore had no title to the premises; that the mortgage was then a lien, and therefore that any such consent of Zimmerman in writing, even if given as required by the fourth section of the act, would be subject to the recorded mortgage.

It must always be remembered that the plaintiff's claim is based on a supposed consent, alleged to have been given by Zimmerman as owner, and that Zimmerman's own estate was, before he got it, subject to the mortgage now held by the defendant Souder.

Now, we deny that Zimmerman, whose own title was subsequent to the Souder mortgage, had power to consent to the furnishing of goods to the premises on which a lien could

attach which should be prior to that mortgage. The case of *Tompkins* v. *Horton,* 10 *C. E. Gr.* 291. (in Chancery), if it ever was correct law, has lost all its application since the act of 1884 (*Pamph. L., p.* 260), requiring mortgage-holders whose mortgages would be cut off by a sale under the lien claim to be made parties to the suit. It is under this act that the mortgagee is made a party in this case.

Such a construction of the act would produce endless confusion, and enable a subsequent owner to defeat precedent liens. He could by this mode create a greater estate than he himself held.

On the question of the consent in writing, where the building or structure for which lien is claimed is erected (as in this case) by one other than the owner, and the construction of the fourth section of the Mechanics' Lien act, see *Associates, &c.,* v. *Davison,* 5 *Dutcher* 423 (Court of Errors, &c.) This provision is "intended to enable the party erecting the building, as owner, to get a credit on the faith of the building and land."

"Materialmen may protect themselves, if they rely on a lien, by getting signed and delivered, and also acknowledged and recorded, a consent before they give credit." See, also, *Hervey* v. *Gay,* 13 *Vroom* 177.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The questions to be decided relate to the Mechanics' Lien law.

The facts were these, viz.: Moore was the owner of the premises in question, and commenced the erection of a building thereon. Before this structure was finished he sold and conveyed the property to one Zimmerman, entering into a written agreement with him to proceed and complete the building "in a good and workmanlike manner." This agreement was signed by both Moore, the vendor, and by Zimmerman, the vendee. On the day of the conveyance, and before its execution, Moore made and delivered a mortgage on the lot to one Casselman, who, in the following year, assigned it

to Souder, one of the defendants, and Zimmerman conveyed the premises to the other defendant, Ellison.

After the passing of the title, as mentioned, by Moore to Zimmerman, the former, in execution of his contract, proceeded to complete the building, and in the course of that work employed the claimant, Erdman, to furnish and put in a portable furnace and a portable cooking-stove, and it is for doing this that a lien on the building and land is now claimed.

To this demand two defences are sought to be erected, the first of which is, that after his conveyance of the premises to Zimmerman, Moore, the former owner, could not encumber the property with a lien, and that, in any event, a lien so imposed could not affect the prior mortgagee.

But this objection cannot prevail. The statute provides that when a building is erected by a person other than the owner, it shall not be liable to a lien " unless such building be erected by the consent of the owner of such lands in writing."

That the consent thus called for was given in the present instance seems indisputable, for the contract signed by both the vendor and the vendee, in express terms, obliged the former to go on and finish the building then under way.

With regard to the mortgage, the explanation appears to be equally plain. When the mortgagee took his encumbrance, he knew that the building was erecting, and that any lien that could be legally put upon the premises in the course of the completion of the structure would be superior to his mortgage. With this knowledge he is chargeable, for the statute provides that upon a sheriff's sale, under a judgment upon the lien claims, the purchaser shall acquire the estate which the owner had in the lands at the commencement of the building, and subject only to such mortgages as had been created and recorded prior to that event. The mortgage before us, not having been in existence at the time of the commencement of the building, must be subordinated to the claimant's lien. *Gordon* v. *Torrey,* 2 *McCart.* 114.

The second and remaining question touches the lienability of the claim of the plaintiff.

It has been shown that consisted of a portable furnace and a portable cooking-stove or range, neither of which was bricked in or otherwise incorporated with the building. The heater rested on a cemented floor, the pipes from it running into the chimney-flues, and similarly with respect to the range.

From this statement it is clear that neither of these appliances could be deemed fixtures simply by reason of their physical connection with the building. It must be conceded that such connection was of the slightest character. It would not have injured either them or the structure, in the slightest degree, to have removed them.

Nevertheless, although accepting this as the necessary inference, in my opinion, this heater and range are, under the proofs before the court, to be considered and treated as parts of the realty. The ground of this conclusion is that it was the intention of the owner of the building to make them such. With regard to such purpose no question has or could have been made. The owner of the property, who started the building, agreed to complete it, and in fulfillment of that contract put in these appliances. They were passed by the conveyance of the land from the vendor to the vendee. The owner of the land, therefore, meant these things to be a complement of the building, and they, from their nature, were fitted for that purpose, and, although slightly attached to the building, thereby, as it is deemed, became part of it.

This conclusion has been reached by applying to the facts before us the legal rule upon the subject in its modern and most approved form. With regard to such legal principle, it is common knowledge that the legal decisions stand in an attitude of helpless variance. All attempts to harmonize them have proved utter failures, and on that account it is felt that nothing would be gained by a special reference to the reported cases. Mr. Phillips, in the last edition of his excellent treatise on Mechanics' Liens, in a few sentences, has expressed what he considers the true rule to be applied in these cases. He

says, quoting from a judicial decision: "The weight of the modern authorities establishes the doctrine that the true criterion for determining whether a chattel has become an immovable fixture consists in the united application of the following tests: 1. Has there been a real or constructive annexation of the article in question to the realty? 2. Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected? 3. Whether or not it was the intention of the party making the annexation that the chattel should become a permanent accession to the freehold." And, further, the author remarks: "And of these three tests pre-eminence is given to the question of intention. Heaters and ranges are fixtures. Whether a given article is a fixture or not depends on the intention, and that, in general, is judged mainly by the method of attachment and the use."

Applying the doctrine thus clearly stated to the facts of the present case, no room is left for doubt. The chattels in question have, in a legal view, become consolidated with the realty, and, consequently, the premises are subject to the lien of the claimant.

With respect to the case of *Rahway Savings Institution* v. *Irving Street Baptist Church*, 9 *Stew. Eq.* 62, which was much relied on by the counsel of the mortgagee, it is sufficient to remark that the principle as just stated, so far from being controverted by it, is expressly admitted, for in his exposition of the law of the subject the Chancellor says: "There are numerous adjudged cases in which stoves have been held to be fixtures, but it will be found that in all of them there was either actual annexation to the freehold or other evidence of intention to make them permanent additions thereto."

Whether the rule thus defined was properly applied to the facts of the reported case is of no importance in our present inquiry.

Let the Camden County Circuit Court be advised of the views above expressed.