Ashby v. Ashby.

*v.*

AMOS K. ASHBY.

[Filed May 11th, 1900.]

1. When a tenant accepts a lease of a fully-equipped grist-mill in active use for that purpose, with an obligation to keep the property in good repair at his own cost, without exception of wear and tear, the elements, or other cause of dilapidation, and during his term takes the greater part of the equip-

Ashby v. Ashby.

ment out of the mill, and so deals with it that it cannot be restored, and puts new machinery in its place, which thus becomes an essential part of the mill equipment, and cannot be removed without destroying the property for milling purposes, the tenant will be restrained from removing the new machinery and thus dismantling the mill.

2. The equity of the owners to prevent the destruction of the mill is not impaired by the fact that the new machinery is better than that which it replaced, nor that it is not unchangeably fastened to the freehold, nor by the claim that it was put in and might be removable as trade fixtures.

3. The equity of the owners lies in their right to have their property, which was demised as an entirety for a grist-mill, remain in its entirety a grist-mill, and in fact that the tenant by the removal of the essential machinery of the mill and the substitution of other equally essential in its place, has irrecoverably made the latter a part of the mill beyond his right to remove it.

4. Trade fixtures to be capable of removal by a tenant must be additions made by the tenant to the property of the landlord, and not substitutions for essential parts of it, which the tenant has irrecoverably removed.

On bill for injunction, answer and proofs.

The four complainants are the owners as tenants in common in fee, each of the undivided one-fifth part of a steam grist-mill property in Burlington, New Jersey. The defendant is the owner of the other undivided fifth part. This property was owned by Edward Ashby, the father of the Ashby parties, in his lifetime, and was by him by his will, dated the 19th day of June, 1886, and proven June 5th, 1888, devised to his widow for life, with a privilege to his son, Amos K. Ashby, the defendant, to continue in the occupancy of the mill, &c., "he paying all taxes and all needed repairs at his own proper cost," and a further yearly rental of $425 in quarterly payments to the widow during her life, subject also to the same conditions and provisions as were in the will imposed upon another son, Timothy, regarding his occupancy of what the will describes as the Mansfield mill. One of these conditions was that he should "keep the said property in good repair at his own proper cost." The testator gave the further privilege to his son, Amos, the defendant, to become the purchaser of the Burlington mill, at the price of $10,000, during the period of three months after the decease of the widow. After that period the executors were

given a power to sell the properties and to convey them in fee-simple. The testator gave several bequests, among others one to the defendant of $1,000 debt which he owed the testator. Subject to the above disposition, the testator devised the residue of his estate to three of his sons and two of his daughters in fee, and in case any died without issue during the lifetime of the widow, the share of such decedent to vest in the survivors. One daughter, Mrs. Phares, has conveyed her share to the complainant Robert Ivins. The defendant is one of the residuary devisees to the extent of the fifth.

The widow survived the testator. None of the children died during the lifetime of the widow. The defendant, Amos K. Ashby, continued in the occupancy of the Burlington mill, under the terms prescribed in the will, and has remained in possession ever since. On the death of the widow, in 1897, the defendant did not exercise his option to purchase the mill, and the executors, on the expiration of the three months after the death of the widow, advertised the property for sale.

The defendant, Amos K. Ashby, had made certain repairs, &c., to the mill building, for which he insisted he ought to be repaid before any sale should be made under the power, and he filed his bill in this court, in the case of *Amos K. Ashby* v. *Timothy W. Ashby et al.*, seeking to restrain the executors' sale of the mill until his right to compensation should be established, and his expenditures in repairing the mill building should be decreed to be paid him out of the proceeds of the sale. This matter has been disposed of in an opinion in that cause filed in May, 1900.

On March 8th, 1898, when the executors were about to make public sale of the mill, pursuant to advertisement, the defendant appeared and caused a notice to be read, declaring that he claimed to be the owner of three roller mills, the purifier, smut mills, separators, two buhr mills, a flour packer, the bolting machines, all the belting and other fixtures in the mill, and that he claimed the right to remove them from the mill when he surrendered the premises to any purchaser. The effect of this notification was to defeat the executors' sale, as no one would bid in view of the

defendant's claim to own in his own right substantially all the machinery necessary to the carrying on of the milling business.

The complainants, who are entitled to four-fifths of the proceeds of the executors' sale, thereupon filed their bill in this cause against the defendant, setting up the foregoing facts, and insisting that the machinery and equipment claimed by the defendant are part of the mill and real estate, and necessary and indispensable to the use and running of the mill, and that they were paid for by the widow and devisees in remainder; that their removal by the defendant who is in possession would be waste to the premises, and a destruction of the mill for its sole use, and a prevention of the execution of the power of sale by the executors. They pray that the defendant may be restrained from removing the above-named or any other fixtures from the mill, and from committing any waste thereon, and for further relief, &c.

The defendant answered, asserting that he had placed the claimed articles in the mill as tenant. He denied that they were fixtures, and as such a part of the realty which could not be removed; he denied that they were paid for by the other persons interested in the premises, and averred that they were all put in the mill by himself, as tenant, for his own use and benefit. He insisted that he had a right to give notice of his claim, and that in doing so he had not unlawfully interfered with the executors' sale; that beyond giving the notice he had made no threats to remove any fixtures or to do any waste; that his sole object in giving the notice was to preserve his rights, and not lose them by allowing an innocent party to buy the mill without notice of his claim.

A preliminary injunction was allowed and the case has now come to final hearing.

*Mr. Clarence T. Atkinson* and *Mr. Mark R. Sooy,* for the complainants.

*Mr. David J. Pancoast* and *Mr. Charles E. Hendrickson,* for the defendant.

GREY, V. C.

The complainants are entitled, as the owners by devise of four undivided fifth parts of the mill, to receive that proportion of the proceeds of the sale of the mill which the executors are about to make under the power given to them in the will of Edward Ashby, the father of the Ashby family.

The defendant is the devisee of the other undivided fifth, but originally came into possession of the mill in his father's life-time, under a lease from him. He continued in possession under the privilege given him in the will, and thereby assumed the obligations there imposed—that he would pay taxes, a named rent, and for all needed repairs, and keep the property in good repair at his own proper cost. His possession under that tenure began in 1888 and continued up to 1897, the time of the termination of the life estate by the death of the widow. He declined to purchase the mill under the option reserved for him in the will, and when the executors afterwards proceeded to sell he gave notice that he claimed to own all the above-named machinery.

The sole object of the complainants in this suit is to restrain the defendant from removing this machinery.

The defendant admits that he claims to own the articles named, and that he gave public notice at the executors' proposed auction sale of this claim, and insists that he had a right to give such a notice of ownership, and was indeed bound to do so in order to save the risk of losing his property in case a purchaser should in good faith buy the mill in ignorance of his rights. He further contends that there is no occasion for an injunction to restrain his removal of the things claimed, because he declares he has made no declaration of a purpose to remove them.

The whole burden of the defence has been directed to show that the defendant owns the articles in dispute and has the right to remove them. It is difficult to see what value such an ownership can have unless it is to be protected by the maintenance of possession of the things owned. The defendant now has them in actual holding in the mill. It is proposed to sell

the premises of which they are the essential equipment, and it can hardly be believed that the defendant, if he goes out of possession of the building, would leave what he strenuously insists is his property, behind him.   Furthermore, the evidence of the defendant's intention to remove is quite convincing.   The proofs, including his own testimony on cross-examination, indicate not only such a purpose but also a willingness on the part of the defendant so to use his claim of ownership and the proclamation of his purpose to remove, that the disclosure, when made public to the attending bidders at the proposed executors' sale, would prevent anyone but the defendant from bidding.

So far as any issue is made on the point of the defendant's purpose to remove the equipment of the mill, it is clearly shown that he has claimed, and now asserts, a right to remove, and that it is his intention to do so whenever he deems it best for his own interests.

The other point of dispute to which the greater part of the proof and argument is directed, is the assertion by the defendant that he is the owner of the several articles in question and that he has a right to remove them from the mill.

It should be noted that the defendant asks no relief as tenant in common against the complainants by way of cross-bill.   He sets up no claim of a right to have the complainants, as co-tenants of the mill, reimburse him in whole or in part for his outlay in purchasing the new machinery.   He stands for his defence solely upon his contention that he is the absolute owner in severalty of the equipment of the mill and that he has a right to remove it.

This position of the defendant calls for an examination of the manner in which he came into possession of the mill.   The evidence, with but little variance, shows that, after a preliminary tenancy of the mill under his father in his lifetime, the defendant continued in the occupancy under the terms prescribed by his father's will above mentioned, among which was an undertaking that the defendant should keep the property in good repair and pay for all needed repairs at his own expense.   Just prior to the father's death the mill had been refitted with new

machinery, changing it into the more modern roller method of flour making. A considerable expense had been incurred in making this change, for which the defendant had given his notes, one of which, at the time of the father's death, was in the bank, and the defendant refused to pay it. After some dispute a compromise settlement was arranged for the express purpose of preventing any contention about the ownership of the equipment of the mill as distinguished from the mill property. The family voluntarily raised and paid $2,018.70, about one-half of the expense undertaken by the defendant in purchasing the roller machinery. This was in 1889, in the lifetime of the mother, during whose estate the defendant was, by the terms of the will, secured to be permitted to occupy the mill at a fixed rental, the payment of the taxes and keeping the property in good repair.

There is no dispute that immediately after this change was made the whole equipment of the mill belonged to the mill property, and constituted a part of the realty, and that the title thereto was in the owners of the land.

Nor is there any dispute that the building was orginally erected as a steam grist-mill; its machinery and equipment were fitted into it for that purpose, and became and were used as an entirety, a single thing, composed of various parts, but all appropriate for and used to accomplish a common purpose. It was this entire thing which came into the possession of the defendant at the inception of his tenancy, and has been held and used by him ever since as an entirety, an active, producing steam grist-mill " plant." The testator so dealt with it, speaking of it in his will as his " mill property."

The defendant continued to occupy the mill under the terms named in the will from this time (1889) up to the death of the widow, in 1897, which terminated the life estate, and brought to an end the privilege of occupancy secured by the will to the defendant at the fixed rate therein named, and also necessarily thereafter relieved the defendant from further observance of the obligations imposed by the will, that he should repair, &c. After the death of the widow he was, as to his co-tenants, an

occupier, without contract expressed or implied, except such as would be imputed by the law to a tenant in common who held and enjoyed the exclusive use and profit of the common property.

All the disputes between the parties have arisen, touching matters which happened during the period between 1889 and 1897, while the defendant held under the terms imposed by the will.

After the mill had been refitted with the roller method as above stated, in 1889, the defendant claims that by the year 1895 the equipment of the mill had become much worn and worthless, and that the several machines used in the flour-making process were so inefficient as compared with those in competing mills, that he was unable to produce a standard flour or profitably to carry on the business without supplanting the old and worn out machinery with that which was of more modern invention. But all the witnesses agree that in 1895 up to the very time the several machines, &c., claimed by the defendant were put into the mill, it was actually running in the production of flour and feed, and was stopped for the taking out of the machines then in use, and the introduction of the new ones (now claimed by the defendant) in their place. It is, therefore, an established fact that the defendant took out the machinery of an active running plant and put other in its place. It is also undisputedly shown that the machinery which he took out was indispensably necessary to the performance of some one or more of the functions of the mill in preparing the final product, and that which he put in supplied its place in these particulars. Though each machine may stand separate and apart from the others, it is yet so connected by spouting and elevators, and by the partial process which each contributes in grinding the grain, or in separating it into its several marketable forms, that all constitute but a single "plant." Each machine is but a link in itself, but all are needed to form the chain which gives to the separate links as parts of the plant their only value. Take out but one link and the chain is destroyed. Every millwright who was examined declared in substance that if the machines, &c.,

claimed by the defendant were taken out of the mill there would be no mill left.

The contention of the defendant is that the machines he claims to own were trade fixtures brought by him upon the premises for the furtherance of his business, not permanently or incorporatively annexed to the realty, but only temporarily placed there for the convenient conduct of his trade.

The law considers favorably the right of the tenant to bring upon demised premises such additions to the property, already there, as may aid him in the conduct of his business, and allows, during the period that he remains in possession, the removal of those articles which the tenant brought on the demised premises, so far as they come within the definition, "trade fixtures."

The instances in which such removals are permitted, of property which has for the time become a part of the realty, should, however, be limited to additions made by the tenant to the property demised, and cannot be extended to include voluntary substitutions, whereby the tenant takes away from an equipped plant and destroys component parts essential to the single purpose to which the whole is devoted and for which the tenant rented it, and puts in their place new parts, which, when introduced, become by their relation to the premises, so entirely parts of the realty that their removal would destroy the whole plant.

The defendant received a furnished and equipped steam gristmill as an entirety. Each piece of its machinery was but a component part of the entire thing. When the defendant, while the plant was yet running, took out any of these component parts and destroyed them or used them to purchase new apparatus which he put in place of the old machinery, the new apparatus being also essentially necessary to the accomplishment of the common purpose of the plant, it became, by the defendant's own act, a part of it, and he cannot afterwards be permitted to destroy the whole plant by taking away its several essential parts or any of them. The portions taken away were essentially necessary to the maintenance of the plant; the portions substituted are equally so. The renovated plant requires all the parts claimed by defendant, in order to be of any value as a mill.

Ashby v. Ashby.

If they be taken away the premises will be worthless for the purpose for which they were constructed and used. Such a result would offend both the rules recognized as maxims as long ago as the time of Lord Hardwicke—first, that "You should not destroy the principal thing by taking away the accessory;" and secondly, that "The thing proposed to be removed must be deemed to be part of the estate, because it cannot subsist without it." *Lawton* v. *Lawton, 3 Atk. 13.*

The defendant claims that the new machines are only screwed or blocked upon the floor, and this simply to hold them in place, and that for this reason they have not been annexed to the realty; that their removal can be affected without serious damage to the mill building, and *Blancke* v. *Rogers, 11 C. E. Gr. 566; Ames* v. *Brewing Co., 11 Dick. Ch. Rep. 309,* and *S. C. on appeal, 12 Dick. Ch. Rep. 347,* are cited to support the claim.

This argument wholly ignores the undisputed fact that the defendant came into possession of the mill fully equipped with a set of machines which successively and continuously performed the single work for which the whole premises were constructed and used, namely, the grinding of grain. He has taken these out, sold them, exchanged them, or converted them into old iron, so that they are utterly useless as parts of a mill equipment. He has supplied their places by the new machines which he has so connected with the spouting, the elevators, the gearing and other equipment of the mill, that each now successively and continuously exercises its peculiar function in producing the single product for which the mill and its equipment were constructed and have always been used. The defendant, by his own uninvited act of removing the previous machines and putting the new ones in their places, has irrecoverably made the latter a part of the plant. Having so dealt with them, he has made them of the essence of the realty and the extent of the annexation is of little significance. In *Erdman* v. *Moore, 29 Vr. 461,* there was no such physical annexation as would alone have made the article a fixture, but there was a clear showing of an intention to do so, and the exhibition of this intent was declared by

35

Ashby v. Ashby.

Chief-Justice Beasley to be controlling. In *Feder* v. *Van Winkle, 8 Dick. Ch. Rep. 370,* Mr. Justice Van Syckel, speaking for the court of appeals, declared that the fact that the articles in dispute might be removed and used elsewhere, was not decisive of their character. The fifth paragraph in the syllabus of that case might have been written for this case. The learned justice says : *" The chattels in this case were actually annexed to the freehold ; they were fitted for and applied to the use to which the real estate was appropriated, all being designed for and necessary to the prosecution of a common purpose. Thus the machinery and land became unified and incorporated together as a whole,"* &c. In *Lee* v. *Hubschmidt & Co., 10 Dick. Ch. Rep. 627,* Vice-Chancellor Pitney held that the acts of the parties in dealing with the machines in dispute justified an inference of intention to annex, which overcame their own testimony declaring the existence of a contrary purpose.

The circumstances of the case above recited show that the machines claimed by the defendant have become part of the realty and cannot lawfully be removed by him.

This result is reached irrespective of the obligation imposed upon the defendant by the terms of his father's will that he should keep the property in good repair, and should pay for all needed repairs at his own cost. This obligation to keep the property in good repair applied to the whole property without exception—the building and the machinery, whatever constituted " the property." The defendant was obliged to keep it in good repair, without regard to the cause of the dilapidation. Th will makes no exception because of wear and tear or of the elements. The defendant's own testimony (though disputed by others) is to the effect that most of the machines taken out by him, in 1895, had become so worn out as to be worthless. If that were true it was his duty to keep them in good repair at his own cost. If he thought he could most profitably do this by substituting new machinery in their places, he cannot thereafter take away the new machines put in by way of repair of those which were worn out.

This obligation imposed upon the defendant by the will, under which he continued in possession, rested upon him with the same force as would a covenant to keep in good repair.   He received the bequest and devise provided for him in the will, and he was also secured in his continued possession at a fixed rent which the life tenant could not increase.   Having accepted benefits under the will, the law will not permit him to disappoint the intent of the testator by avoiding the performance of the duties which the latter has by the will imposed.   *Bird* v. *Hawkins, 13 Dick. Ch. Rep. 229,* and cases there cited.

The proposition of the defendant is to dismantle the plant which he received as a complete producing mill, under an obligation to keep it in good repair at his own cost, and to return to the owners not a mill, but a building having indeed an engine and boilers, but stripped substantially of everything which gave it character as a mill.

The complainants have, in my view, a clear right to prevent the defendant from such a course by restraining the removal of the machinery and equipment referred to in the bill of complaint.

I will advise a decree for the complainants, with costs.