THE CRANE IRON WORKS v. SUSAN F. WILKES.

Argued November 14, 1899—Decided January 24, 1900.

1. If a complete machine, purchasable in the market as such, and capable of being used wherever power can be supplied, is placed in the owner's machine shop for use, and is not fastened to the realty, or is fastened only by being screwed to the floor so as to keep it steady while in operation, it does not thereby become part of the realty.

2. A constable having levied upon chattels in the possession of a sheriff under prior executions, and having acquiesced in an absolute sale of the chattels by the sheriff, by virtue of the prior and of subsequent executions in the sheriff's hands—*Held*, that the constable was entitled to the proceeds of sale in advance of such subsequent executions.

On rule to show cause.

Before Justices DIXON, GUMMERE and LUDLOW.

For the plaintiff, *Carroll Robbins.*

For the claimants, *Buchanan & Rellstab, Edwin Robert Walker, Elmer E. Green* and *Francis C. Lowthorp.*

The opinion of the court was delivered by

DIXON, J. This is a controversy over money in court, proceeds of the sale of certain machinery levied on by creditors of Susan F. Wilkes. One of the parties claims as mortgagee of the real estate in which the machinery had been placed by the owner, and thus the first question for decision is whether the machinery had become part of the realty.

In *Blancke* v. *Rogers*, 11 *C. E. Gr.* 563, the Court of Appeals held that, in order to change a chattel into realty, there should be—first, annexation of a permanent character; second, adaptation to the uses of the freehold; third, intention of the owner to make the chattel a fixture. These criteria are supported by the later decisions in *Penn Insurance Co.* v. *Semple*, 11 *Stew. Eq.* 575, and *Feder* v. *Van Winkle*, 8 *Dick. Ch. Rep.* 370. In *Erdman* v. *Moore*, 29 *Vroom* 445, this court

decided that, if intention be clearly shown, slight annexation is sufficient.

The articles in dispute are—No. 1, large lathe; No. 2, large planer; No. 3, small planer; No. 4, one sixteen-inch lathe; No. 5, lathe; No. 6, lathe; No. 9, one thirty-six-inch lathe; No. 10, one twenty-inch lathe; No. 11, lathe; a radial drill; bolt cutter and dies; a milling machine and a shaper.

Each of these articles, when placed in the owner's machine shop for use, was a complete machine, purchasable in the market as such and capable of being used wherever power could be supplied. None of them except the last four was in any way fastened to the realty. The last four were merely screwed to the floor of the building where they stood, so as to keep them steady while in operation.

Under these circumstances they must all be deemed personal property. The fastenings of the drill, cutter, &c., were like those of the dressing machines in *Penn Insurance Co.* v. *Semple, ubi supra,* which, nevertheless, were adjudged to have remained chattels.

Another controversy exists among the judgment creditors and a mortgagee of the chattels, arising out of these facts: After the sheriff had levied on the chattels under several executions out of the higher courts, a constable levied upon them in the sheriff's possession by virtue of executions out of the District Court of Trenton, giving the sheriff notice, and afterwards other executions out of the higher courts came to the sheriff, which were likewise levied on the property. Thereupon the sheriff, without interference from the constable, sold and delivered all the property, realizing more than enough to satisfy the liens prior to the District Court executions, but not enough for all liens. The question is whether the District Court creditors should share in the proceeds.

The liens upon the chattels stood in order of priority as follows: First, the four executions mentioned; second, the chattel mortgage; third, the District Court executions, and fourth, the other executions. It is admitted that, under a

positive arrangement, the sheriff sold clear of the lien of the mortgage. We think it is to be inferred that, by a tacit understanding, he sold clear of the lien of the District Court executions also. This is rendered probable by the acquiescence of the constable, the apparently absolute character of the sale made by the sheriff and the subsequent conduct of the District Court creditors. Under these circumstances justice dictates that, on the one hand, the purchasers should be protected from these creditors, and on the other hand, the claims of the creditors should be transferred to the proceeds of sale.

We conclude, therefore, that the money in court should be distributed among the execution creditors and the chattel mortgagee in the order of priority of lien. The taxed costs of the respective parties in the present controversy may be treated as part of their respective claims in making such distribution.