Campbell *v.* John W. Taylor Mfg. Co.

HARRY L. CAMPBELL et al.

*v.*

THE JOHN W. TAYLOR MANUFACTURING COMPANY.

[Filed July 29th, 1901.]

1. The eighth section of the Mechanics' Lien statute prescribed that "fixed machinery * .* * for manufacturing purposes shall be considered a building for the purposes of this act." In order that machinery shall be considered to be a building, it must have a fixed, and not an adjustable and changeable, character.

2. The things furnished in this case are shown, by the proofs, to have been five separate machine tools, finished and completed before shipment, taken apart for that purpose, brought on the premises in their component parts for re-assembling. They took the places of previously-used machine tools of like character and will be succeeded by like machines when they may be worn out. Several were in separate pieces, in boxes, unpacked. One was in actual use. Those which were in place were not built into, or made part of, the building, but were merely fastened to the floor to keep them steady in their places.—*Held*, these machines were not *fixed* machinery within the meaning of the Mechanics' Lien act. The component parts of these machines, separated only for purpose of shipment, were not "materials" within the meaning of that act. The machines themselves had separate and distinct functions, which were wholly unrelated— they were transient, adjustable tools; such machines were not "materials" furnished to, or parts of, fixed machinery, under the act.

On appeal from determination of receiver against a claim of preference as a creditor.

*Mr. Eckard P. Budd,* for the receiver.

*Mr. Charles K. Chambers,* and *Mr. Abbott* (of the New York bar), for the Prentiss company, petitioner and appellant.

GREY, V. C. (orally).

I have gone over this matter since counsel have submitted it, and I think I can dispose of it now.

The Taylor Manufacturing Company was a corporation doing business in this state, at Mount Holly, in the manufacture and production, among other things, being the greater part of its business, of power-wheels and water-wheels. Incidental to that business, which had been conducted for a short period of time by the Taylor Manufacturing Company, but for a very much longer period by its predecessor, the Risdon works, the Taylor Manufacturing Company made certain purchases. It had a machine shop before these purchases were made, and it had machines and tools and the ordinary equipment of such a shop. The tools were not satisfactory, and the Taylor company replaced them by purchase from the Prentiss company. They consist of five different pieces. No. 1, the Lodge & Shipley lathe; No. 2, the Rogers bore mill; No. 3, the Sibley field drill; No. 4, the Bickford boring mill; No. 5, the Giant key-seater.

Each of these machines had its separate function and use, and when they were purchased they were forwarded by the vendor, the Prentiss company, to Mount Holly, to be set up in the machine shop of the Taylor Manufacturing Company. Before this had been completely done as to some of the machines, the Taylor Manufacturing Company went into the hands of a receiver, and the Prentiss company then filed with the receiver its claim for payment for the price of the several machines, asserting a right to preference in payment because of an alleged mechanic's lien claim filed by virtue of the debt created by the purchase. The receiver heard the parties, and refused it preference as a lien claim, but admitted it as a general claim, entitled to share with other general creditors of the defendant company. From that adjudication of the receiver the Prentiss company has taken its present appeal. On that appeal additional testimony has been taken upon the question of the lienability of the debt which the Prentiss company asserts. The amount due is not disputed, unless, possibly, upon the question of the non-delivery of a turret, one of the auxiliary portions of the Lodge & Shipley lathe, No. 1, but not apparently an essential part of the lathe proper, being rather an auxiliary appliance, affording a convenient method of operating the lathe, and not doing the work itself. It may be that some deduction may be necessary as to the non-delivery of

Campbell *v.* John W. Taylor Mfg. Co.

this turret, but as to all the rest the amount of the claim is undisputed.

The whole question of argument before this court on the appeal has been addressed to the lienability of this debt. That is placed by the appellant upon its claim that, under the first, fifth and eighth sections of the Mechanics' Lien act, it has a right to a lien for this debt, because the appellant says that it was contracted for the furnishings of material for the erection of fixed machinery; and it is entitled to enforce that debt by lien because it furnished materials for fixed machinery, and such a debt is a lien whether the materials were actually used on the premises in the erection of a fixed machine or not. It became a lien because the debt was incurred for that purpose.

Whether this construction of the statute, as stated by the appellant, should be accepted, need not be determined in this case, because I take it to be perfectly clear that the things furnished were not, within the meaning of the statute, materials for the erection of fixed machinery. The proof is entirely clear that the five different articles furnished were, when they left the shop of the Prentiss company and arrived at the shop of the Taylor company, each one in itself separately perfect and entire. They were in pieces for convenience of shipment to Mount Holly, where the separated parts of each machine were to be re-assembled, thus making the same machine which had been in the shop of the Prentiss company before shipment. There was no use, nor intended use, of these separated parts as materials out of which fixed machinery was to be constructed, unless the completed machines are held to be fixed machinery.

Materials, in the meaning of the statute, and in the view taken in the discussion in the case of *Morris County Bank* v. *Rockaway Manufacturing Co., 1 McCart. 189*, cited by appellant, are essentially different from the things delivered in this case.

In the *Morris County Bank Case* the materials claimed for were, as I gather from the report, bricks and building stuffs, which, in the condition in which they were delivered, had no perfected function, and were simply something out of which a building might be constructed. No brick had, when delivered, any relation to any other brick, each was separate and distinct

until the construction was begun. The component parts of these machines were utterly different. Each part, before it was shipped, had been properly fitted to the other and tested as an entirety, and when the temporarily separated parts were again assembled they again constituted a perfected entirety. The separation into component parts and delivery in that condition was not as materials for purposes of construction, but as an entire and complete machine, temporarily separated for convenience of transportation and delivery. Under no construction could such a transaction be held to be a furnishing of materials. What were furnished were five different, separate and perfected machines. I shall deal with the matter, therefore, as a deliverance by the Prentiss company to the Taylor company of five different machines, each a perfect entity in itself, usable and complete for the accomplishment of certain work.

At this point some notice should be taken of the condition of things at the machine shop of the Taylor company at the time when these machines were received there. The proof is that the establishment was then in the full and active conduct of business for the manufacture of wheels, and had been a plant for that purpose a considerable time before the purchase of these machines from the Prentiss company. These machines were not a part of the original equipment of the shop. They were not built in and incorporated into the realty as part of the original structure. When they got there the building in which they were to be placed had long been erected; other machines had been there, which had performed the functions which these new machines were to perform. The other machines were taken down and the new ones were to be installed in their places. They were, therefore, so far as the location and use to which they were to be put, substitutions for, and improvements upon, the previous equipment of the shop.

Each of these machines had, as stated, its own separate function, and it is claimed that even if the delivery in parcels did not constitute it "materials," yet it must be held to be within that section of the Mechanics' Lien law which grants a lien for the price of fixed machinery. The appellant insists that the debt was incurred for the delivery of fixed machinery, and that this must secure it a lien.

The clause in the statute which declares that fixed machinery for manufacturing purposes shall be considered to be a building for the purposes of the Mechanics' Lien act, does not apply to all machinery for manufacturing purposes; otherwise the furnishing of sewing machines, washing machines and the like, which have an adjustable, movable, unfixed character, would create liens. The words of the statute, and its obvious intent, give a lien only when the thing furnished is such that it comes within the designation "*fixed* machinery for manufacturing purposes." Only then can it be considered a building.

The twenty-eighth section declares that in the case of machinery, the bringing of the same on the premises shall be the commencement of the building which the statute contemplates. This specification of the time when this imagined building shall be deemed to have commenced, does not annul the requirement that the machinery which may be considered to be a building shall be of a fixed, and not of an adjustable, character. The twenty-eighth section simply declares the time when this statutory building shall be deemed to have commenced. The machinery to create it must still be of a fixed, and not of a changeable character.

It is therefore of vital importance in this case to ascertain whether these machines were fixed or transient in their nature.

Pending the taking of testimony in this matter, I was invited by counsel of both parties to go and see these machines, in order that the testimony might be fully understood. The counsel of both parties attended, and very frankly exhibited the location of these various machines. They were, part of them, still in boxes, unassembled; some of them were partially erected; one was entirely set up, and, I think, had been in actual use.

The testimony shows that under the floor on which two of them had been placed a solid brick wall had been built, and under the floor on which two others stood brick piers had been put. These brick walls or brick piers formed no part of the machines, and the machine formed no part of the brick wall or piers. The walls and piers were obviously erected for the purpose of enabling the floor to carry the weight of the machines, and keep them steady and support them. There was no con-

Campbell *v.* John W. Taylor Mfg. Co.

structive connection between the foundations and the machines, for the floor intervened between them. The foundation, as I understand the testimony, held the same relation to the floor that heavier joists, inserted for the purpose of more effectually carrying the floor, would have occupied. The machines were set up on top of an unfinished floor, and were bolted down, or screwed down, or blocked down, as the case might be, to the floor. There was no structural incorporation of the foundation into, and making it part of, any of the machines. This was so of the machine which was actually put up and in use, and it was so, in a very much greater degree, of those machines which were only partially put up and in use. Those which were in place were fastened in their places to prevent swaying and movement, and were no part of the construction of the real estate. Others were not even put in place, but were still, as to parts of them, in the boxes in which they had arrived, or were lying, in their separated component parts, unassembled. The machines were obviously of such character that they were completely finished before sale, and were, when delivered, ready for use when set up and power was applied to them. They could have been set up anywhere else, where power was used, just as well as in the Taylor company's shop, and can now be taken away without altering either the machines themselves or the structure of the real estate. Their attachment to the freehold is in no sense structural; on the contrary, it is merely casual and convenient.

The principle upon which the Mechanics' Lien law is based is to give a lien upon the building and land, because the thing done for which the lien is claimed increased the value of the property of the owner. *Coddington* v. *Dry Dock Co., 2 Vr. 489.* As the party furnishing the goods had specially contributed to increase the value of the land, it was deemed equitable that he should, to the extent of his claim thus arising, have a lien upon the land. All the modes of procedure prescribed by the lien statute contemplate the enforcement of a lien upon land. This has not been changed by the extension whereby "fixed machinery" and "fixtures for manufacturing purposes" are considered to be buildings for the purpose of the Lien act. No lien can be maintained for a debt owing for "fixed machinery" unless that machinery

Campbell *v.* John W. Taylor Mfg. Co.

has become such part of the real estate as to pass by a sale under the Lien act. It follows that the decisions which determine whether machines and tools have, by the circumstances of the dealing with them, been converted from personal property into real estate are applicable in this cause to define whether the facts proven show that the machines in question have became, in the sense of the lien statute, "fixed machinery." All these machines are of the same class as to their attachment to the realty. Whatever annexation was given them was for the purpose of staying them in their places, holding them so that they could not move on the floor, as, when so swaying, they would not effectually do their work. The lien claimant's expert, when asked whether "the object in fastening the machines to the floor would be to make them steady when used for work," answered, "Yes, sir."

The court of appeals, in the leading case of *Blancke* v. *Rogers, 11 C. E. Gr. 563,* declared the law in such matters. Where, from the whole case, it appeared that the annexation was intended to be for the purpose of staying the machine in its place, to overcome the tendency to motion, and where the machine was not, by its structure and manner of building, incorporated into, and made part of, the realty, it remained personal property, capable of being chattel mortgaged, and did not become part of the freehold.

The same rule was recently declared by the supreme court, in the case of *Crane Iron Works* v. *Wilkes, 35 Vr. 193.* There the machines consisted of a large lathe, a large planer, a small planer and a number of other lathes, apparently of very much the same nature as the machines here in question. That court, in discussing the relation of these machines to the land, for the purpose of ascertaining whether they had become part of the realty, cited the case of *Blancke* v. *Rogers* as the leading case on the point, and the cases of *Penn Insurance Co.* v. *Semple, 11 Stew. Eq. 575,* which was a foreclosure case and petition for injunction to stay removal of machinery; *Feder* v. *Van Winkle, 8 Dick. Ch. Rep. 370,* which arose between a mortgageholder and a receiver of an insolvent estate, and *Erdman* v. *Moore, 29 Vr. 445,* a mechanic's lien case, as turning upon the tests above applied. The supreme court also held, in the *Crane*

*Iron Works Case,* that complete machines, purchasable on the market as such, and capable of being used wherever power can be supplied, if placed in the owner's machine shop for use, and not fastened to the realty, or, if fastened, only by being screwed to the floor, so as to keep them steady while in operation, do not thereby become part of the realty.

These incidents attend upon all the machines for which this lien claim is asserted. The undisputed evidence shows that they were stayed in their places for the purpose of making them steady, and not for the purpose of incorporating them into, and making them form part of, the realty. They were complete when they were brought there. They were not built into the machine shop—they were simply put there as complete things. Their predecessors had been taken away and these were supplied in their places, and the time may come when they themselves may be taken away and others put in their places. They have not been shown to be "fixed machinery." They have been proven to be adjustable machines, serving their time, coming, going and movable as complete machines when worn out or antiquated. In short, they are tools and convenient appliances, and not "fixed machinery." They are designated as "machine tools" in the letter of December 15th, 1900, asking the Prentiss company to "please rush the machine tools ordered from you."

I think, therefore, the lienability of the debt incurred by the delivery of the machines has not been established, and that the receiver's adjudication should be sustained and the appeal dismissed.