February 8, 1909.

————o————

No. 4606.

(Court of Appeal, Parish of Orleans.)

## PADUCAH DISTILLERIES COMPANY VS. CRESCENT MFG. CO.—CROLL & HUBER, PROPRIETORS, ET AL.

1. To acquire the right to the exclusive use of a name, device or symbol, as a trade mark, it must appear that it was adopted for the purpose of identifying the origin and ownership of the article to which it is attached, or that such trade-mark must point distinctly either by itself or by association, to the origin, manufacture or ownership of the article on which it is stamped.  It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity and to distinguish it from like articles manufactured by others.

2. If the device, mark or symbol was adopted or placed upon the article for the purpose of identifying its class, style or quality, or for the purpose other than a reference to its identification of its ownership, it cannot be sustained as a valid trade-mark.

3. The exclusive right to the mark or device claimed as a trade-mark is founded on priority of appropriation; that is to say the claimant of the trade-mark must have been the first to use or employ the same on like articles of production.

4. Such trade-marks cannot consist of words in common use as designating locality, section or region or country.

5. A proprietor has in his trade-mark a right of property which the courts will protect from infringement.

6. This right accrues to him from the adoption and use of the trade-mark for the purpose of designating the particular goods he manufactures or sells, and although it has no value except when so employed, and indeed has no separate abstract existence, but is appurtenant to the goods designated, yet the trade-mark is property, and the owner's right of property in it is as complete as that which he possesses in the goods to which he attaches it, and the law protects him in the enjoyment of the one as fully as of the other.

—151—

7. There is a class of cases,—distinguished from trade-mark cases in that they do not involve the violation of any exclusive right to the use of the word, sign or symbol, for the word may be purely generic or descriptive and the mark or symbol indicative only of style, shape or quality and as such open to public use like the adjectives of the language, yet when the word, sign or symbol is used in unfair competition of trade as by a party with the intention of pirating on the good will of another, who had acquired a reputation under it, and of palming off on the public his goods as those of another, the word, sign or symbol, though not the subject of a technical trade-mark, will be as fully protected as if they were such, on the ground of unfair trade.

8. A trade-mark is infringed though it be not taken in its entirety. What the court has to satisfy itself of is that there has been an essential portion of the trade-mark used to designate goods of a similar description.

9. It is not necessary that a trade-mark should on its face show the origin, manufacture or ownership of the articles to which it is applied. It is sufficient that by association with such article it has acquired with the public an understood reference to such origin and ownership.

10. The word "Ginola" which the plaintiff corporation adopted as a brand for a particular gin sold by it, is a word foreign to every known language. It is an arbitrary and fanciful word. It signifies nothing in itself. It describes no kind, quality, composition, grade or properties of gin or anything else, and it serves no purpose except that for which the plaintiff adopted it, i. e., the purpose of identifying a gin as the particular gin which the plaintiff is offering to the trade. It points distinctively by association to the origin, manufacture or ownershp of the article on which it is stamped and was designed, as its primary object and purpose, to indicate that the plaintiff corporation was the owner or producer or seller of a particular gin, as dist'nguished from the gin manufactured, produced or sold by others, and as such is entitled to judicial protection.

Appeal from Civil District Court, Division "A."

Titche & Rogers, for Plaintiff and Appellant.

Pierson, Walton & Pierson, for Defendant and Appellee.

MOORE, J.   Plaintiff prosecutes this appeal from a judgment maintaining a plea of no cause of action interposed by defendants to the original and supplemental petitions of plaintiff.

The allegations of the original petition are that the plaintiff corporation "is and has been engaged in the business of selling wholesale, whiskies, wines, gin, cordials and other alco-

—152—

holic drinks, and it has considerable business in the Parish of Orleans; that a profitable part of the business consists in the sale of liquor which it sells under the name of "*Ginola*," being a preparation of gin of great excellence to the taste and of peculiar properties; that the said brand or trade-mark was invented and adopted by your petitioners who were the first to use it, same never having been previously used; that owing to its purity, palatability and its peculiar properties, petitioners secured for *Ginola* a very ready sale, and it was and is in great demand and is well known to the trade of the city and elsewhere, and petitioners, by reason of its popularity and the extended sale of said *Ginola* were enjoying a considerable source of profit and revenue therefrom and wherever petitioner's genuine *Ginola* has been used it has acquired and enjoyed a high reputation, and particularly in New Orleans, and petitioners have used great efforts to extend the sales thereof and make it a success and have spent considerable sums of money in advertising the said brand in order to create a demand and market therefor; that said name or brand *Ginola* has been used by it (petitioner) for several years and they have had the said brand copyrighted in the Patent Office of the United States under the laws of the United States, also have further protected their rights and notified the public by registering the same with Mida's Trade Mark Bureau of Chicago, Ill., which is an institution utilized by dealers in whiskies and wines and liquors for the purpose of making known their respective brands and trade-marks and is resorted to by the trade for information upon that subject; that the defendants for some time past have been infringing upon your petitioners' rights and have offered for sale and have sold in this city of New Orleans and elsewhere a liquid, presumably a concoction or compound of gin, under the name of *Ginola* with the unlawful and fraudulent purpose of substituting the same for petitioners' goods and representing the said goods to be the goods of petitioners, in violation of petitioners' aforesaid rights; that defendants well knew that petitioners were the owners and proprietors of the brand *Ginola* and had the exclusive right to use the same; that their (defendants') said conduct is not only a fraud upon petitioners but also to the trade at large; that the counterfeit liquid which is sold by the defendants under the name of *Ginola* is of very inferior quality

and has a bad taste and flavor and is calculated to and does seriously injure the reputation and salability of petitioners' goods, as persons buying and using the imitation goods sold by the defendants are apt to be prejudiced against the genuine article; that all of the said infringements and use of the trade-mark *Ginola* was done clandestinely and without the knowledge and consent of petitioners, and that the said sale and conduct of the defendants constitute unfair and fraudulent competition in business and has seriously injured petitioners' business, and if allowed to continue will work an irreparable injury to peti-tioners' business; that the said sales and conduct of the defen-dants have greatly damaged petitioners by depriving them of profits to which they were entitled and which they would have made by the sales of their genuine *Ginola* and also by destroying the reputation of their own brand by reason of the bad quality of the counterfeit article; that petitioners are entitled to an accounting by the said defendants of all sales made by them and to an injunction restraining and enjoining them from making any further use of the said trade-mark or trade-name.''

The prayer is for judgment recognizing in petitioners ''the sole and exclusive ownership and right to use the said trade-name *Ginola* as a name or brand for gin or any compound of gin or for any purpose whatsoever and enjoining them, or each of them, from selling any gin, compound of gin or article, thing or substitute whatsoever under the name of *Ginola;* and finally for judgment against defendants for the sum of two thousand dollars, etc.

Prior to the filing of their exception of no cause of action defendants excepted to the original petition on the ground of vagueness, averring in their said exception: ''That said peti-tion states that petitioners sell a liquid under the name *Ginola,* being a preparation of gin of great excellence, pleasant to the taste and of peculiar properties. 'That said statement is in-consistent and at variance with the trade-mark registered by plaintiff in the United States Patent Office on January 29th, 1907, which registry of trade-mark states that same is a trade-mark for gin.' That exceptors are entitled to know whether the word *Ginola* as applied to the article prepared by plaintiffs is for gin or a preparation of gin, and if a preparation of gin, what the preparation consists of.''

This objection being sustained but with leave to amend, a

supplemental petition was filed wherein it is alleged as supplemental to the allegations of the original petition:

"That *Ginola* is a gin, and that the word *Ginola* is a purely fictitious term invented by petitioners; was never in use by any one before and designates a kind of gin. That the trade-mark or copyright *Ginola* is for gin and the goods sold by petitioners thereunder are gin."

The specific grounds assigned why the pltintiff corporation discloses no cause of action in the petition as amended, are, to quote from appellee's brief, 1st, "that plaintiff has, and can have no exclusive use of the word 'Ginola' as applied to the gin placed on the market by it, forasmuch as this word (*Ginola*) is not as thus applied, an arbitrary or fanciful word, but is one which only describes the kind, quality, composition and properties of the article to which it is applied," to-wit: gin. 2nd, "That no allegation is made in the petition that the defendants have imitated the labels or lithographic picture on the label, which is a picture of an elderly man holding in his hand a crucible or retort; nor is any allegation made that defendants have imitated the packages or bottles of the plaintiff's or style of package in which the plaintiffs put up their goods." 3rd, "That it is not alleged that defendants are using, imitating or counterfeiting the entire trade-mark, but only charge that they, the defendants, are putting on the market and selling a gin under the name of Ginola"; and 4th, that as the plaintiff corporation is not "seeking to protect the recipe or composition of the article called 'Ginola' and prepared by plaintiff" and which "confessedly is nothing but gin which plaintiff does not pretend to be the inventor of, "any person "has the right and privilege of distilling gin and placing it on the market with the designation: *Ginola*."

The general principles applicable to trade-marks and the conditions under which a party may establish an exclusive right to the use of a name or symbol, are well settled by the following decisions of the Supreme Court of the United States, to-wit: Canal Co. vs. Clark, 13 Wall 311; McLean vs. Fleming, 96 U. S. 245; Manufacturing Co. vs. Trainor, 101 U. S. 51; Goodyear vs. Goodyear Rubber Co., 128 U. S. 598; Corbin vs. Gould, 133 U. S. 308; Lawrence Mfg. Co. vs. Tennessee Mfg. Co., 138 U. S. 537; Brown Chemical Co. vs Meyer, 139 U. S.

540; Columbia Mill Co. vs. Alcorn, 150 U. S. 460; Coffman vs. Carter, 178 U. S. 168; and by the following decisions of the Supreme Court of this State, viz: Wolf vs. Barnett & Lyons, 24 A. 97; Insurance Oil Tank Co. vs. Scott, 33 A. 946; Franke vs. Dreyfus Co. et als, 34 A. 80; Vonderbank vs. Schmidt, 44 A. 264; and Handy Co. vs. Commander, 49 A. 1119.

These cases establish the following proposition:

(1) That to acquire the right to the exclusive use of a name, device or symbol, as a trade-mark, it must appear that it was adopted for the purpose of identifying the origin and ownership of the article to which it is attached, or that such trade-mark must point distinctively, either by itself or by association, to the origin, manufacture or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity and to distinguish it from like articles manufactured by others. (2) That if the device, mark or symbol was adopted or placed upon the article for the purpose of identifying its class, style, or quality, or for the purpose other than a reference to its identification of its ownership, it cannot be sustained as a valid trade-mark. (3) That the exclusive right to the mark or device claimed as a trade-mark is founded on priority of appropriation; that is to say the claimant of the trade-mark must have been the first to use or employ the same on like articles of production. (4) That such trade-marks cannot consist of words in common use as designating locality, section or region or country.

A proprietor has in his trade-mark a right of property which the Courts will protect from infringement.

This right accrues to him from the adoption and use of the trade-mark for the purpose of designating the particular goods he manufactures or sells, and although it has no value except when so employed, and indeed has no separate abstract existence but is appurtenant to the goods designated, yet the trade-mark is property, and the owner's right of property in it is as complete as that which he possesses in the goods to which he attaches it, and the law protects him in the enjoyment of the one as fully as the other.

As said in Amoskeag Manfg. Co. vs. Trainor, 101 U. S. 51: "Judicial protection is granted in such a case, (infringe-

ment of a trade-mark), upon the ground that the honest, skill-ful, industrious manufacturer or enterprising merchant who has produced or brought into the market an article of use or consumption that has found favor with the public and who, by affixing to it some name, mark, device or symbol which serves to distinguish it as his and from that of others, shall receive the first reward of his honesty, skill, or enterprise, and shall in no manner and to no extent be deprived of the same by any other who to that end appropriates the same or a colorable imitation of the same to his production, so that the public are or may be deceived."

There is another class of cases distinguished from trade-mark cases in that they do not involve the violation of any exclusive right to the use of the word, sign or symbol, for the word may be purely generic or descriptive and the mark or symbol indicative only of style, shape or quality and as such open to public use, "like the adjectives of the language," Denneson Mfg. Co. vs. Thomas Mfg. Co., 94 Fed. Rep. 651, in which class of cases the Courts hold that where the word, or sign, or symbol is used in unfair competition of trade, as by a party with the intention of pirating on the good will of another, who has acquired a reputation under it, and of palming off on the public his goods as that of another, the word, sign or symbol, though, as we have stated, not the subject of a trade-mark, will be as fully protected as if they were.

This class of cases have come to be known in the law as unfair trade cases and the right to judicial protection against the improper use of such word, sign or symbol, is predicated on the same principles and controlled by the same consideration as are trade-mark cases.

Indeed trade-mark law is being gradually merged into that of unfair trade, and except where the jurisdiction is to be determined the Courts do not consider so much whether there is a valid trade-mark as whether one who has built up a valuable business under some word, sign or symbol is being defrauded by another in the use of a similar word, sign or symbol. If such is the fact relief is granted without decision as to the question of trade-mark, Colgate vs. Adams, 88 Fed. Rep. 899.

"The tendency of the Courts at the present time seems to be to restrict the scope of the law applicable to technical trade-

marks, and to extend its scope in cases of unfair competition," Church & Dwight Co. vs. Russ, 99 Fed. Rep. 276.

It was Mclean vs. Fleming, 96 U. S. 245, which laid the foundation for the law of Unfair Trade and to this day it is one of the most important cases on the subject. It is there said: "It is not necessary, in order to give a right to an injunction that a specific trade-mark should be infringed; but it is sufficient that the Court is satisfied that there was an intent on the part of the respondent to palm off his goods as the goods of the complainant and that he persists in so doing after being required to desist." In that case the word "Columbia," to indicate a brand of complainant's flour, though the word could not be made the subject of a trade-mark, as it was a geographical name, was protected.

"It is not essential to the protection of a trader against a rival's fraudulent interference with his business, that he shall have a trade-mark to be pirated. It is enough if the wrong-doing rival uses any letters, marks, shapes, devices or symbols so nearly like those previously employed by the complainant to distinguish his wares that purchasers from him may be likely to believe they are getting the goods of the complainant"— Trask Fish & Co. vs. Worter, 20 Mo. App. 408-419.

"While a descriptive, or geographical, or personal name cannot constitute a technical trade-mark, yet, where, as here, an article has come to be known by the descriptive word, one may not use that word to palm off his goods as the goods of another which has first adopted it, and by which appellation the goods have come to be known. One may not use his own name for such purpose when it works a fraud. If he uses the descriptive word or a geographical name, or his own name, it must be so used as not to deprive others of their rights, or to deceive the public, or the name must be accompanied with such indications that the thing manufactured is the work of the one making it or would unmistakably inform the public of the fact," Williams vs. Mitchell, 106 Fed. Rep. 168.

Having thus ascertained and announced the general principles applicable both to trade-marks and to unfair trade, as well as to the conditions under which a party may be protected against an infringement of the one and the improper use of a name, sign or symbol by means of the other, we are now to consider the plaintiff's petition in order to determine whether the

allegations thereof—which allegations, for the purposes of the exception, are to be taken as true—affirmed a cause of action falling within the operation of these principles and, for this reason, entitling the plaintiff corporation to the relief and protection sought.

The substantive allegations of the petition, which we have recited, *supra*, are that the plaintiff corporation is now and has been for many years past engaged in selling at wholesale a gin under the brand, or trade-mark of "*Ginola*," which name it invented and adopted for the purpose stated and which name had never been previously used by any one; that its gin so branded or named or trade-marked is of great excellence to the taste, is well known to the general trade and has acquired great popularity, a high reputation and an extensive sale, and has been a source of profit and revenue to plaintiff. That plaintiff has spent considerable sums of money in advertising the said brand and has made it a success; that it has had the brand "Ginola" as its trade-mark for the gin it was selling copyrighted in the Patent Office of the United States; "that the defendants for some time past have been infringing upon petitioners' rights and have offered for sale and have sold * * * * a liquid, presumably a concoction or compound of gin, under the name of "Ginola" with the unlawful and fraudulent purpose of substituting the same for petitioners' goods and representing the same goods to be the goods of petitioner, in violation of petitioners' aforesaid rights; that defendants well knew that petitioners were the owners and proprietors of the brand "*Ginola*" and had the exclusive right to use the same; that their said conduct is not only a fraud upon petitioners but also to the trade at large; that the counterfeit liquid which is sold by the defendants under the name of "*Ginola*" is of very inferior quality and has a bad taste and flavor and is calculated to and does seriously injure the reputation and salability of petitioners' goods as persons buying and using the imitation goods sold by the defendant are apt to be prejudiced against the genuine article, etc."

1.

The word "*Ginola*" is one which is foreign to every known language. It is an arbitrary fanciful word; and one of plaintiff's own coining and invention founded on priority of appropriation by plaintiff.

It signifies nothing in itself; describes no kind, quality, composition, grade or properties of gin or anything else, and it serves no purpose except that for which the plaintiff adopted it, *id est*, the purpose of identifying a gin as the particular gin which the plaintiff is offering to the trade.

It points distinctively by association to the origin, manufacture or ownership of the article on which it is stamped and was designated, as its primary object and purpose, to indicate that the plaintiff corporation was the owner or producer or seller of a particular gin, as distinguished from the gin manufactured, produced or sold by others.

## II.

There was no necessity for the petition to allege "that the defendants have imitated the labels or lithographic picture on the label * * * * or the packages or bottles of the plaintiff or style of package in which the plaintiffs put up their goods," for as much as the plaintiff company does not claim that it has the exclusive use of any particular label or packages or bottles or style of packages," and even if it had such exclusive right to use same, it is sufficient to know that it makes no complaint as to their being used by the defendants. The complaint is that the infringement consists of the use of the word *"Ginola"* alone, which it claims is its trade-mark.

## III.

It is insisted by the defendant, and this is made the point on which the case was decided by the District Court, that the word *"Ginola"* is not plaintiff's *entire* trade-mark; that the trademark consists of "a square picture or design of an elderly man holding in his hand a crucible or retort with the words surrounding same, as follows: 'A distillation of Buchu leaves, Juniper berries and Burdock seeds for kidney and bladder troubles,' the word 'Ginola.' being above the design" in large letters, this being shown by the certificate of registration issued by the Midas Trade-Mark Bureau, and which certificate was produced by plaintiff in answer to a call for oyer made by defendant; and it is argued that as the plaintiff company does not allege that there was an infringement of the entire trade-mark no cause of

action can exist for a part of it only.

There is a two-fold answer to this objection. In the first place it is apparent that the "square picture or design" referred to, is a label and is purely ornamental, and that the words: "A distillation of Buchu leaves, etc., etc.," are clearly descriptive. Now no principle of the law of technical trade-marks is more familiar than that which affirms that no mark, or sign, or design, or picture, or a label, for ornamental purposes, or the use of any words or names which are descriptive of the qualities, ingredients or characteristics of the article to which it applies, can be made the subject of a valid trade-mark; Brown Chemical Company vs. Meyers, 139 U. S. 540; therefore it is that this label or ornamental sign, and these descriptive words are not, intended to and could not become, the subject of a technical trade-mark and that they constituted no part of the trade-mark, *id est*, "Ginola," which plaintiff adopted and employed for the purpose stated.

In the second place, even if the entire label with its design and descriptive words constituted the trade-mark, it is not necessary that the *entire* trade-mark be copied. A trade-mark to be taken need not be exactly copied, nor need it be copied with slight variations, but it must be a *substantial* portion of the trade-mark, or which it has sometimes been called the *material* portion, or the *essential* portion of the trade-mark.

"What the Court has to satisfy itself of is that there has been an essential portion of the trade-mark used to designate goods of a similar description. See citation from opinion of the Master of the Rolls in a recent case, quoted by Clifford J. dissenting in Amoskeag Mfg. Co. vs. Trainor, 101 U. S. 51-65.

"No one who has counterfeited a legitimate trade-mark and applied spurious symbols in competition with the genuine, can avoid the charge of infringement by showing that the false mark has in practice been accompanied, on labels, capsules or otherwise, by trade names, designations, descriptions or other accessories, not forming part of it, as to render it unlikely that the public has been deceived. Such a showing, while it may defeat the nature or measure of the relief granted, cannot defeat a suit for infringement." Bass, Ratcliff & Gretton, Ltd., vs. Feigenspan, 96 F. R. 206-212.

"To constitute an infringement exact similarity is not required; there may be an infringement without it. Nor need the resemblance be such as would deceive persons seeing the two trade-marks side by side. * * * The plaintiff is entitled to protection if the trade-mark of defendant would deceive the ordinary purchaser, purchasing as such persons ordinarily do." Liggett & Meyer Tobacco Co. vs. Haynes, 20 Fed. Rep. 883-864.

"I am well satisfied that a technical trade-mark, although not a fac-simile of another, may, nevertheless, be so used by a rival manufacturer as to imitate another's trade-mark and when such actually deceive the public, a court of equity will afford relief." National Biscuit Co. vs. Swick, 121 Fed. Rep. 1007-1011.

In Alleghany Fertilizer Co. vs. Woodside, 1 Hughes 115, Eureka Ammoniated Bone Superphorpols of lime "was claimed a trade-mark. Held: The word 'Eureka' was entitled to protection, but not the following five words." "The words which compose a trade-mark need not each be new. If the combination thereof be new and the description of the origin of the goods and their ownership by the manufacturer who devises the mark it will be unlawful for any other person to filch the combination *or any important part thereof.* "Wolf vs. Barnett & Lewis, 24 A. 97.

## IV.

The last objection urged is that the word "Ginola" does not indicate the origin of the article and that "as the plaintiff corporation does not pretend to have been the inventor of gin, which Ginola confusedly is, any person has the right and privilege of distilling gin and placing it on the market with the designation Ginola"; and finally that "the use of the word by itself does not indicate the manufacture of the article or the ownership thereof, and is therefore not capable of exclusive appropriation."

This objection is answered by the following authorities:

"It is not necessary that a trade-mark should on its face show the origin, manufacture, or ownership of the articles to which it is applied. It is sufficient that by association with such articles in the trade it has acquired with the public an under-

stood reference to such origin, etc." Dennison Mnfg. Co. vs. Thomas Mnfg. Co., 94 F. R. 651.

In Alleghany Fertilizer Co. vs. Woodside, 1 Hughes 115, the word "Eureka" as indicating an Ammoniated Bone Super-phosphate of Lime Manufacture and sold by complainant, was contested as a trade-mark on the ground that it did not sufficiently indicate origin and ownership. To this objection the Court replied: "This was a mistake. It served to distinguish the complainant's manufacture quite as effectively as names ever served to distinguish things."

In Mendez vs. Holt, 125 U. S. 514, it was held that: "The brand 'La Favorita' on flour did not indicate by whom the flour was manufactured but it did indicate the origin of its selection and classification."

"When the mark has become recognized by purchasers as a distinctive designation of a particular maker, manufacturer or seller of a certain quality of goods, it will be sufficient indication of origin or ownership within the rule requisite to its protection as such, although purchasers may not, from the word or otherwise, be able to tell who is the particular maker or seller of the article." People vs. Fisher, 3 N. Y., Supp. 766; 50 Hun. 552.

"It is not essential that a trade-mark should indicate name and address of the manufacturer and seller of articles. " Insurance Oil Tank Co. vs. Scott, 33 An. 946.

See also Wolf vs. Barnett & Levi, 22 A. 97, where the words "Scheidam Schnapps" was recognized as expressing origin and ownership for a brand of gin. So also as to "Aromatic Cocktail Bitters," 49 An. 1119, and as to Insurance Oil, 33 A. 949, and as to "Chicken Cock" whiskey, G. C. White Co. vs. Miller, 50 F. R. 277; and as to "Golden Wedding" whiskey, Pontefact vs. Isenberger, 106 F. R. 499; "Kaiser" beer, Kaiser-braun vs. Blatz, etc., Co., 74 F. R. 222; "Old Crow" whiskey, Caines vs. Leslie, 54 N. Y. Supp. 421.

The contention that as "Ginola" is gin and as plaintiff does not claim to be the inventor of gin, the latter may be made and sold by any person under the name of "Ginola" is best answered by the decision in Wolf vs. Barnett & Lions, 34 A. 97-99, where a similar argument was made as to the gin in that case

which the plaintiff was selling under the trade-mark of "Scheidam Schnapps," the Court said:

"It is further urged that the plaintiff is neither the discoverer nor first manufacturer of the article for which he claims the mark. We do not understand the current of authority to be in favor of this proposition that this is necessary to his case. In the passage cited from Upton on Trade-Marks, page 24, the writer says:

"It seems to be the established doctrine that property in trade-marks, so far at least as they consist in the proper name of the thing designated, or by long use have become known, by that name, can exist only in those who have the exclusive right to manufacture or to sell the specific articles, and so far as they consist in anything other than the proper name of the thing which is susceptible of becoming a legitimate trademark, can exist only in the manufacturer or in those entitled to represent the manufacturer."

"Assuming this statement to be accurate, it simply means that if the plaintiff's trade-mark consisted merely of the words "Holland Gin" it would be necessary for him to show an exclusive right to manufacture; but if the trade-mark consisted of something else, as the plaintiff's own name combined with sonorous appellation well calculated to express origin and ownership as well as to attract the attention and impress the memory of the buyers, it is only necessary that he should manufacture, without exclusive right, or represent a manufacturer. And we think the true rule, as applicable to this case, is correctly stated in the following passage from the same writer, page 97, to be this:

"That the honest, skillful and industrious manufacturer or enterpriseing merchant who has produced or brought into the market an article of use or consumption, that has found favor with the public and who, by affixing to it some name, mark, device or symbol, which serves to distinguish it *as his*, and to distinguish it from all others, has furnished his individual guarantee and assurance of the quality and integrity of the manufacturer, shall receive the first reward of his honesty, skill, industry or enterprise; and shall in no manner and to no extent be deprived of the same by any other, who to that end appropriates

—164—

and applies to his production the *same or a colorable* imitation of the *same name, mark, device or symbol,* so that the public are, *or may* be deceived or mislead into the purchase of the productions of one supposing them to be those of the other..

"The question in cases of this character is not whether the complainant was the inventor or proprietor of the article made by him, and on which he puts his trade-mark, nor whether the article made and sold under the trade-mark by the responrent is equal to his own in value or quality."—Coats vs. Holbrook, 2 Sandf. N. Y. ch. 586; Patridge vs. Mend., 2 Barts N. Y., ch. 101; McLean vs. Fleming, 96 U. S. 252.

It thus appears that the allegations of plaintiff's petition present a perfect case of infringement of a technical trade-mark. But even if they did not present such a case it is manifest that if the word "Ginola" be regarded only as a descriptive sign and not the subject of a technical trade-mark; and if, as alleged in the petition, the sign was not in general use but was adopted by the plaintiff corporation as descriptive of the gin it was selling and it was used by all the defendants without plaintiff's consent or authority and with the fraudulent intention of pirating on the good will of plaintiff who had acquired a reputation under it and by palming the goods off on the public as the goods of the plaintiff, the sign may yet be protected on the ground of unfair trade. In either event a perfect cause of action is alleged and the exception should not have been maintained.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided, set aside and reversed and that the cause be remanded for trial upon its merits according to law.

The costs of appeal, as well as those incurred below on the trial of the exception of no cause of action to be taxed against the defendant and appellee; and all other costs to await final decision on the merits.